**COMMUNITY PARK VILLAGE, INC., Respondent,**

v.

**STATE TAX COMMISSION, Appellant.**

**No. WD 33883.**

Missouri Court of Appeals,
Western District.

April 5, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Denied May 31, 1983.

Application to Transfer Denied
June 30, 1983.

Robert L. Hawkins, III, Stephen G. Newman, Asst. Pros. Attys., and Suzanna Lohman, Asst. Counsel, State Tax Com'n, Jefferson City, for appellant.

Robert J. Swift, Jr., Cullen Coil, Jefferson City, for respondent.

Before WASSERSTROM, P.J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

The State Tax Commission in a review of the taxable status of real property owned by Community Park Village denied the claim that the property was exempt from taxation because used for purposes purely charitable. On review by the Circuit Court of Cole County, the decision of the Commission was reversed and the Commission appeals. We conclude the original decision by the Commission was correct and reverse the order of the Circuit Court and remand the cause for reinstatement of the Commission decision.

The facts of the case were developed in evidence presented to the Commission and are not in dispute. Community Park Village is a non-profit corporation organized for the stated purpose of providing rental housing for low and moderate income families. The subject real estate had, at an earlier date, been acquired by the Jefferson City Housing Authority, presumably by condemnation proceedings not included in this record. The Housing Authority cleared the land of the then existing substandard buildings. Later, the property was transferred to Community for use in construction of a 50-unit apartment complex. Construction was completed late in 1972.

Community's apartment units are available for rental by tenants who meet guidelines of the United States Department of Housing and Urban Development through which Community obtained an insured loan for construction costs. Generally, tenants are required to be employed although five tenants occupying apartments at the time of the hearing were excepted from the employment requirement because they were retired and one family qualified for a federal rent subsidy. For the most part, the apartment units were occupied by faculty and students at Lincoln University including students of foreign nationalities. The rents charged by Community are substantially below market rates charged in the area for comparable facilities.

Community functions as a conventional owner-landlord in the operation of the project. No special services or facilities are provided to tenants beyond those normally furnished to renters in an apartment complex. Tenants are expected to pay their rents and are evicted if they do not do so. In a period of seven months preceding the hearing, four tenants had been evicted for various reasons including defaults in rental payments, loud parties and permitting unauthorized persons to live in the household.

Community's claim to tax exemption for its apartments rests on the assertion that the property is used for charitable purposes as the term is employed in Article X, § 6 of the Missouri Constitution and the exemption statute, § 137.100(5), RSMo 1978. Despite the implication of the revenue laws of the state, this court has jurisdiction because decision in the case involves application of existing law to the facts. *A.P. Green Refractories Co. v. State Tax Commission,* 621 S.W.2d 340, 345 (Mo.App.1981).

The definitive case on property tax exemption under the charitable use concept is *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission,* 566 S.W.2d 213 (Mo. banc 1978). In that case, Franciscan had developed a housing project for the elderly under the Senior Citizens Housing Act of 1962. The project functioned not only to provide reduced rental rates to low-income elderly persons, but activities such as crafts, books, movies, speakers, card parties, discussion groups and trips for shopping and sightseeing as well as visits by clergy. No tenant in *Franciscan* was evicted for non-payment of rent. The court noted that tenants in the project had incomes so low that without the project, they would likely become public charges.

The *Franciscan* opinion reviews two lines of charitable exemption cases, the first being exemplified by *Salvation Army v. Hoehn,* 354 Mo. 107, 188 S.W.2d 826 (banc 1945), and the second, *Defender's Townhouse, Inc. v. Kansas City,* 441 S.W.2d 365 (Mo.1969). Capsulized, the difference between the two lines of decision is that the *Salvation Army* case focused primarily on the use made of the property whereas the *Defender's* case stressed economic aspects. In *Franciscan,* the court criticizes and rejects the *Defender's* line of authority because consideration of economic aspects, other than for the purpose of determining whether the operation is not-for-profit, is not an acceptable substitute for deciding whether the property is used for a charitable purpose. After the *Franciscan* case, it is not appropriate to deny charitable exemption merely because collection of rents or fees charged to participants defrays all costs of the project.

The test for evaluating a claim of charitable exemption adopted by *Franciscan* was restated and clarified in *Barnes Hospital v. Leggett,* 589 S.W.2d 241 (Mo. banc 1979):

"(1) it must be actually and regularly used exclusively for purposes purely charitable as 'charity' is defined in *Salvation Army v. Hoehn,* 354 Mo. 107, 114, 115, 188 S.W.2d 826, 830 (1945); (2) it must be owned and operated on a not-for-profit basis; and (3) the dominant use of the property must be for the benefit of an indefinite number of people and must directly or indirectly benefit society generally." *Barnes Hospital* at 244.

The first element of the test, use for purposes purely charitable, is the source of much of the controversy in exemption cases. The definition which *Franciscan* and *Barnes* approve is drawn from *Salvation Army v. Hoehn, supra,*

"Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government." * * * *Salvation Army,* 188 S.W.2d at 830.

The focus for evaluation of a charitable exemption claim is primarily on the type of benefits bestowed by the activity. Thus, in *Franciscan,* substantial reduction in rentals charged tenants was an important but not a decisive factor. In upholding the exemption, the court stressed numerous social and educational activities provided to the residents which furthered the well-being of the recipients and established "the sense that life is worth living, that society cares." *Franciscan, supra,* at 225.

The third element of the test, the benefit to society generally, is closely aligned to the first but relates to the impact on the public at large. It is not enough that the benefits relieve burdens from those directly participating, society as well must gain. The use of the property taken from the tax rolls must relieve some public obligation as by reducing the likelihood that persons will become public charges or will be forced into living conditions conducive to increasing society's problems. In some measure, the third element extracts a quid pro quo in

consideration for tax relief. In *Franciscan* this condition was found to be satisfied for the reasons previously stated, that is, the situation of the tenants was such that the burden of their care and housing would fall to the public without the project to fill that need.

The final element in the three-part test, the ownership and maintenance of the property on a not-for-profit basis, presented no problem in *Franciscan* and presents none here. In former cases such as *Defender's Townhouse, Inc. v. Kansas City, supra,* the circumstance that the not-for-profit entity was acquiring equity by retirement of debt did give cause for argument that the increase in equity constituted a profit. The rejection of the economic concept and the overruling of *Defender's* and similar cases by the opinion in *Franciscan,* however, has eliminated the need to address this feature. Indeed, the not-for-profit basis for activities of Community is conceded.

Turning now to application of the facts in this case to the tests of *Franciscan* and *Barnes Hospital,* we conclude Community does not meet the constitutional and statutory requirements for tax exemption prescribed by the cited cases. The sole and exclusive benefit to the tenants of Community is reduced rent. There are no programs of social, moral or religious activities, no contributions to the general welfare of the tenants and no purpose for the project except to supply low income housing. While a minimal number of tenants are retired persons, the project serves, in the main, the needs of students and faculty at the university. There was no proof whatever that the occupants would be relegated to substandard living conditions without the project or that they could not afford accommodations rented on the open market.

A case somewhat comparable on the facts is *Pentecostal Church of God of America v. Hughlett,* 601 S.W.2d 666 (Mo.App.1980). There, the church owned six houses used as residences for executive ministers. No rent was charged and no profit was derived from the property. Tax exemption was denied. The opinion held the houses were not used for purposes purely charitable because the residences were used to house persons neither infirm nor needy whose care would not be a charge on the state were the houses not provided.

In *Salvation Army v. Hoehn, supra,* the project gave low cost room and board to single young women. The home also provided "a place of study of a homelike character under wholesome and decent influences and with proper protection and surroundings calculated to inculcate Christian character and develop good citizenship." *Salvation Army* at 831. In *YMCA v. Sestric,* 362 Mo. 551, 242 S.W.2d 497 (banc 1951), young men and boys were provided inexpensive lodging and board and were given facilities for recreation and study "of a homelike and Christian character * * * designed to foster good citizenship and Christian ideals and character." *YMCA* at 506.

The teaching of these cases is that in granting tax exemption based on charitable use, the courts have regularly and consistently relied on benefits to recipients in addition to reduced rentals. Whatever may have been the nature of the added benefits, the distinguishing feature in each case is that the project was intended to aid the residents in the improvement of their moral or social status. Community's rental housing does not purport to fill any such need or further any such purpose.

Community relies heavily on the case of *Bader Realty and Investment Co. v. St. Louis Housing Authority,* 358 Mo. 747, 217 S.W.2d 489 (banc 1949). There, the city housing authority constructed projects to provide low-cost housing. The court held the property to be tax exempt on the ground of charitable use. Community argues that the rationale of *Bader* is applicable here. The *Bader* case, however, involved entirely different facts.

The evidence in *Bader* showed that the housing authority had acquired and cleared an area of slum housing units unfit for habitation and had erected suitable housing in which to relocate persons otherwise consigned to living conditions detrimental to

health and tending to promote immorality and juvenile delinquency. The project therefore benefited society by relieving these evils. As the court stated:

"Nothing could be more public in value or more beneficial to the community as a whole than the clearance and reconstruction of these slum areas where men, women and little children are crowded into hovels of such character as to wholly lack the material things and environmental values productive of good citizenship, good morals and well being." *Bader* 217 S.W.2d at 493.

The present case rests on no comparable facts. Community engaged in no project of slum clearance, it simply bought ground from which substandard buildings had been removed. There was no evidence that tenants occupying the Community apartments came from or had ever lived in crowded hovels or inadequate surroundings nor that they would be forced to do so if the Community project was not available. Indeed the inference is to the contrary based on the fact that many residents are students, some from foreign countries, and all but five of the residents are gainfully employed or receive substantial financial support. Society cannot be said to benefit directly or indirectly from the Community apartment project in any general sense at all.

Measured by the test set down in *Barnes Hospital v. Leggett, supra,* Community does not qualify in its claim for tax exemption. The property is not used for purposes purely charitable and there is no direct or indirect benefit to society generally by reason of Community's use of the property. The judgment of the circuit court is reversed and the cause is remanded with direction that the decision of the State Tax Commission declaring the property fully taxable be reinstated.

All concur.