[No. 7034-1-II.   Division Two.   August 23, 1985.]

ADULT STUDENT HOUSING, INC., *Appellant,* v. THE DEPARTMENT OF REVENUE, ET AL, *Respondents.*

*Larry Klossner* (*Eugene E. Feltz* and *Mark A. Williams, of counsel*), for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *William B. Collins, Assistant,* for respondent State.

*Arthur D. Curtis, Prosecuting Attorney,* and *Curtis Wyrick, Deputy,* for respondent Clark County.

ALEXANDER, J.—Adult Student Housing, Inc. (ASH) appeals a judgment dismissing its complaint for: (1) an injunction preventing the Washington Department of Revenue and Clark County from collecting 1978 and 1979 real property taxes, and (2) for a refund of 1980 real property taxes paid. We affirm.

ASH is a nonprofit Oregon corporation which operates in this state as well as Oregon and Hawaii. It is organized "solely to promote, build . . . organize . . . acquire . . ., and manage housing facilities for students and faculty members of colleges and universities without regard to race, creed, color or national origin . . . not for profit."

In 1972, Clark College of Vancouver, a state operated community college, orally entered into a contract with ASH which provided that ASH was to build and manage a housing facility on property selected and owned by ASH.[1]

In order to finance the purchase of the real property, as well as construct the housing units, ASH obtained 100 percent financing at a very low interest rate (3 percent per annum) from the United States Department of Housing and Urban Development (HUD). The loan was repayable in 40 years. Such a loan was available to "educational institutions" under the College Housing Act of 1950, 12 U.S.C. § 1749.[2] The loan was secured by a mortgage in favor of HUD on the real property purchased by ASH. As a condition of the loan, ASH entered into a "Regulatory Agreement," which contained restrictions relating to the operation of the facility and disbursement of the proceeds of the loan. These restrictions include a provision limiting the rental fee charged by ASH. ASH was limited to setting a fee schedule commensurate with its need to repay the loan, and pay taxes and management expenses. Consequently, their rental rates were considerably below the prevailing rates for comparable housing in the area.

ASH built 15 apartment buildings and a recreational building on 6 acres of land. The apartment units in these

---

[1]The only written documentation of any contractual relationship between ASH and Clark College is a resolution of the college's Board, recognizing the need for student housing and authorizing the president of the college to "work out construction details" with ASH.

[2]12 U.S.C. § 1749c(b)(3)(A) provides that an "educational institution" includes nonprofit corporations established for the sole purpose of providing housing or other educational facilities for students and faculty of qualifying institutions.

buildings were rented by ASH to students and faculty of Clark College. ASH operated the facility as a typical apartment complex, employing personnel to manage it. For these services, Clark College paid ASH a "reasonable fee" equal to the salaries of managers of college operated dormitories.

ASH paid real property taxes on the facility until 1978 when it first sought an exemption, pursuant to RCW 84.36-.815, for the 1977 assessment for taxes due in 1978.[3] The Washington Department of Revenue denied the application. ASH did not pay the taxes and again sought an exemption from the Department in 1979 for the 1978 assessment for taxes due in 1979. This application was also denied. ASH appealed both of these determinations to the Washington State Board of Tax Appeals. ASH requested an "informal hearing" before the Board pursuant to RCW 82.03.150. The Board upheld the Department's denial of the exemptions. In 1981, ASH paid its 1980 taxes under protest, and filed an action seeking reversal of the Board's denial of its request for an exemption for the taxes payable in 1978 and 1979. It subsequently amended its action, seeking an injunction to prevent Clark County from executing on the property to satisfy the unpaid 1978 and 1979 taxes. In 1981, in a separate action, ASH realleged its causes of action in its first complaint and sought a refund of the 1980 taxes. The trial court consolidated these actions, denied the refund for 1980 taxes, and ruled that it was without jurisdiction to reverse the Board's decision upholding the denial of exemptions for the 1978 and 1979 taxes. The court refused to decide whether it had jurisdiction to issue an injunction since it was affirming the Board's

---

[3]RCW 84.36.815 provides, in part:

"In order to qualify for exempt status for real or personal property pursuant to the provisions of chapter 84.36 RCW, as now or hereafter amended, all foreign national governments, churches, cemeteries, nongovernmental nonprofit corporations, organizations, and associations, private schools or colleges, and soil and water conservation districts shall file an initial application on or before March 31 with the state department of revenue. All applications shall be filed on forms prescribed by the department and shall be signed by an authorized agent of the applicant."

denial of an exemption and denying the refund for 1980.

The first issue we address concerns the jurisdiction of the trial court to hear all of ASH's claims. Because ASH has not assigned error to the trial court's determination that it lacked jurisdiction to review the Board's decision to deny exemptions for the tax years 1978 and 1979, we will not review that determination. However, since ASH challenges the trial court's refusal to grant an injunction to prevent collection of the 1978 and 1979 taxes, the jurisdiction of the court to enjoin Clark County and the Department from collecting the taxes for those two years is before us.

It apparently is the position of ASH that in the event this court should reverse the trial court and order a refund of the 1980 taxes, we can grant relief for the years 1978 and 1979 by way of injunction against collection of the tax. RCW 84.68.010 authorizes the issuance of an injunction in cases where "the property upon which the tax is imposed is exempt from taxation." Since the legal issues relating to the existence of an exemption for ASH are identical in respect to each of the three years in question, we would only be obliged to deal with its request for an injunction to prevent collection of the 1978 and 1979 taxes, if we agreed that the trial court erred in denying the exemption for 1980. We, therefore, initially confine our discussion to the tax year 1980.

ASH claims exemption from taxation under two statutes, RCW 84.36.030 and RCW 84.36.050. We address the former statute first. RCW 84.36.030, in pertinent part provides:

> The following real and personal property shall be exempt from taxation:
> Property owned by nonprofit organizations or associations, organized and conducted for nonsectarian purposes, which shall be solely used, or to the extent used, for character–building, *benevolent,* protective or rehabilitative *social services* directed at persons of all ages.

(Italics ours.)

In considering the existence or nonexistence of an exemption from taxation, certain general rules of construc-

tion govern: (1) Taxation is the rule and exemption is the exception, *Department of Rev. v. Schaake Packing Co.*, 100 Wn.2d 79, 84, 666 P.2d 367 (1983); *see also United Parcel Serv., Inc. v. Department of Rev.*, 102 Wn.2d 355, 360, 687 P.2d 186 (1984); *Corporation of Catholic Archbishop v. Johnston*, 89 Wn.2d 505, 507, 573 P.2d 793 (1978); (2) the burden of showing qualification for the tax exemption rests with the taxpayer, *Corporation of Catholic Archbishop v. Johnston, supra;* (3) statutes which are ambiguous are to be construed "fairly and in keeping with the ordinary meaning of their language . . ." *Group Health Coop. of Puget Sound, Inc. v. State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967); and (4) administrative interpretations are entitled to weight in interpreting the statute, *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980), *adhered to,* 95 Wn.2d 962, 633 P.2d 924 (1981); but it remains the court's job, not the agency's, to properly interpret statutes. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 130, 580 P.2d 246 (1978).

Adopting the reasoning of the Board, the trial court held that ASH was not providing "benevolent social services" within the meaning of RCW 84.36.030. The trial court gave a meaning to "benevolent" consistent with the term "charity." Based on its findings that ASH provided only housing services and that it received market value compensation for its services to Clark College in addition to its rental fees, which satisfied its financial obligations, the trial judge reasoned that ASH was not "philanthropic" and, therefore, was not entitled to an exemption.

ASH argues that this court should adopt a broader definition of the term "benevolent," consistent with the notion of conferring a benefit on the general public. ASH asserts that it provides a benefit to the public by making housing available to college students at rates lower than those found in the general market. ASH thus reasons that the existence of those rates encourages and promotes advanced education at such colleges and universities which, in turn, benefits the community at large. The Department disagrees, asserting

that the term "benevolent" is intended to be consistent with the term "charity" as determined by the trial court. The Department further argues that defining "benevolent" broadly is contrary to the rule that exemption statutes are to be construed narrowly. The Department also points out that the trial court found, in an unchallenged finding, that the Department has consistently determined that the low rent housing provided by nonprofit organizations are not "benevolent social services" within the meaning of the statute.[4]

Washington courts have not had the opportunity to discuss the precise issue of eligibility for tax exemption that we are confronted with here. However, other jurisdictions have adopted the Department's position that nonprofit corporations organized simply to provide low cost housing are not entitled to tax exempt status. *See, e.g., Community Park Village, Inc. v. State Tax Comm'n,* 652 S.W.2d 179 (Mo. Ct. App. 1983); *Mountain View Homes, Inc. v. State Tax Comm'n,* 77 N.M. 649, 427 P.2d 13 (1967); *Metropolitan Pittsburgh Nonprofit Housing Corp. v. Board of Property Assessment, Appeals & Review,* 480 Pa. 622, 391 A.2d 1059 (1978); and *London Square Village, Inc. v. Oklahoma Cy. Equalization & Excise Bd.,* 559 P.2d 1224 (Okla. 1976).

ASH criticizes reliance on such cases on the ground that the statutes under consideration in those jurisdictions are statutes which, for the most part, exempt "charitable" uses. ASH cites cases from other jurisdictions which it claims supports an exemption. It is noteworthy that many of these cases involve statutes which use the term "charitable" as well. Further, in many of them, the organization furnishing the low rent housing provided social and educational activities to its tenants. *See, e.g., Franciscan Tertiary Province of Mo., Inc. v. State Tax Comm'n,* 566 S.W.2d 213 (Mo.

---

[4]Mr. Kirpes from the Department testified that any property owned by nonprofit organization which is used for "low-cost housing" has consistently been denied an exemption, citing as examples YMCA of Bremerton, Sea Haven Youth Hotel of King County, and Evangeline House owned by the Salvation Army.

1978); *Banahan v. Presbyterian Housing Corp.,* 553 S.W.2d 48 (Ky. 1977); and *Rio Vista Non–Profit Housing Corp. v. County of Ramsey,* 277 N.W.2d 187 (Minn. 1979).

The case of *Faculty–Student Ass'n of New York State College for Teachers, Albany, Inc. v. Albany,* 17 Misc. 2d 404, 191 N.Y.S.2d 120 (N.Y. Sup. Ct. 1959) is closely akin to the instant case. In *Faculty–Student,* an organization, virtually identical to ASH, sought tax exemption under a statute exempting corporations "organized exclusively for benevolent . . . purposes." The New York court denied the exemption based on evidence that the corporation did not service "needy or deserving" students. In another similar case, *Dow City Senior Citizens Housing, Inc. v. Board of Review,* 230 N.W.2d 497 (Iowa 1975), a denial of a tax exemption to a nonprofit corporation was upheld where a corporation provided housing only to low income persons able to pay its charges. The corporation made no concessions to renters based on need. The statute in question in that case exempted property used by "charitable and benevolent" institutions.

ASH argues that *Faculty–Student* and like cases are distinguishable because it claims that ASH houses "needy students." There are, however, no findings whatsoever in this case identifying the financial requirements for eligibility in housing operated by ASH or establishing that ASH provides housing to those students unable to pay its rental charges. Neither is there any attempt to explain how the provision of housing for faculty of Clark College can be considered a benevolence.

To support a broad interpretation of RCW 84.36.030, ASH relies heavily on *M.I.T. Student House, Inc. v. Board of Assessors,* 350 Mass. 539, 215 N.E.2d 788 (1966) and *Worthington Dorm., Inc. v. Commissioner of Rev.,* 292 N.W.2d 276 (Minn. 1980). These cases, however, are easily distinguishable. In *M.I.T.,* the Massachusetts Supreme Court, in holding that student housing was exempt from taxation, emphasized that the students operated the facility and that the structuring of rates was based on need. 215

N.E.2d at 790. Similarly in *Worthington Dorm.,* the Minnesota Supreme Court, in determining that the organization was entitled to an exemption, found it significant that the organization was more than merely a nonprofit corporation. (1) It received monetary contributions to support itself because the rent did not meet the facility's operating expenses; (2) the president of the corporation did not receive any compensation for his work; (3) the corporation provided needy students with scholarships to assist them in paying the rent; and (4) the educational institution was financially not able to provide housing to its students. These factual circumstances are not present in the instant case.

■■ We are aware that most of the factually related cases from other jurisdictions deal with exemption statutes which contain the term "charitable" or "charity." The Washington statute, however, uses only the term "benevolent" which is not defined in the statute. Do the terms have a different meaning? The dictionary definitions of the terms "benevolent" and "charity" suggest that the words have equivalent meanings. *Webster's Third New International Dictionary* defines "benevolent" as follows:

1: marked by a kindly disposition to promote the happiness and prosperity of others or by generosity in and pleasure at doing good works . . . 2: marked by or suggestive of goodwill or benign feelings: lacking any hostility . . . 3: arising from or prompted by motives of charity or a sense of benevolence: . . .

*Webster's New World Dictionary* defines "charity" as:

1. the love of God for man or of man for his fellow men 2. an act of good will or affection 3. the feeling of good will; benevolence 4. kindness or leniency in judging others 5. voluntary giving of money or other help to those in need. . . .

Our Supreme Court has had occasion to discuss the two terms in a different context. *Susmann v. YMCA,* 101 Wash. 487, 493, 172 P. 554 (1918). The issue there was whether an institution was a "benevolent and charitable institution,"

entitling it to immunity from tort liability. The court said:

It may be conceded, we think, that the purposes for which this corporation is organized are, in the wider sense, benevolent and charitable. Benevolence and charity do not consist wholly of almsgiving. While to relieve the wants of the helpless, the needy, or the indigent is charity, it is not the only form of charity. To engage in the work of improving the spiritual, mental, social and physical condition of young men by the maintenance of lectures, gospel services, libraries, reading rooms, gymnasiums, recreation grounds, social meetings, and such other things as may conduce to these objects so that the beneficiaries may not become helpless, needy, or indigent, is more to the purpose and is, when done gratuitously, perhaps the purest form of charity. But it is not charity in the legal sense to do these things for the purposes of gain, profit, or private advantage, or in the anticipation of gain, profit, or private advantage.

The term "charity" in itself implies gift in some form; it implies the bestowal of goods or money, the rendition of services, or the awarding of privileges, free to the recipient, without gainful return or the anticipation of gainful return to the donors. Hence it is not charity in a legal, or in any sense, to confer benefits which would be charitable if done without gain or the anticipation of gain, when the recipient, in order to receive the benefits, is required to return an adequate consideration. In other words, a charitable corporation to be such must not only engage in works tending to the betterment of mankind, but it must do so as a charity. If it renders no services except those for which it receives an adequate reward it is a business, not a charitable concern, and cannot claim the immunities of the latter. . . . It is but to say that it is not a charity if it does no charity—if its privileges are extended to those only who have the ability . . . to pay . . . value for the privileges afforded.

*Susmann,* 101 Wash. at 493–94.

While we recognize that other jurisdictions have chosen to give "benevolent" a broader meaning than "charity" *(see, e.g., Saint John's Lutheran Church v. Bloomer,* 118 Wis. 2d 398, 347 N.W.2d 619 (Ct. App. 1984)), we choose to follow the line of cases that have concluded that the term "benevolent" is synonymous with "charitable." *See, e.g.,*

*Oregon Methodist Homes, Inc. v. Horn,* 226 Or. 298, 360 P.2d 293 (1961); *Dow City Senior Citizens Housing, Inc. v. Board of Review, supra; Lodge 817, Trustees B.P.O.E. v. Supervisor of Assessments,* 292 Md. 533, 439 A.2d 591 (1982). This is consistent with the well established rule of narrowly construing exemption statutes. We, therefore, hold that nonprofit associations organized simply to provide low rent housing to tenants, be they students, elderly citizens, or low income people, without more, do not qualify for an exemption from real property taxes. As the Missouri court in *Community Park Village, Inc. v. State Tax Comm'n, supra,* stated:

> It is not enough that the benefits relieve burdens from those directly participating, society as well must gain. The use of the property taken from the tax rolls must relieve some public obligation as by reducing the likelihood that persons will become public charges or will be forced into living conditions conducive to increasing society's problems. . . .
>
> The teaching of these cases is that in granting tax exemption based on charitable use, the courts have regularly and consistently relied on benefits to recipients in addition to reduced rentals. Whatever may have been the nature of the added benefits, the distinguishing feature in each case is that the project was intended to aid the residents in the improvement of their moral or social status.

*Community Park Village, Inc.,* 652 S.W.2d at 181–82.

To hold otherwise would exempt ASH from real property taxes simply because of its status as a nonprofit corporation and for no other reason. Being nonprofit does not alone make a corporation benevolent or charitable. Neither does providing low rent housing to college students and faculty make it a benevolent service. ASH is able and is required to offer rents below the prevailing market rate primarily because it has obtained a low interest, long–term loan from a federal agency.

ASH can hardly claim that it relieves Clark County taxpayers of a burden since the County has no statutory obli-

gation to provide housing for community college students or faculty. Its contribution to the community is laudable, but is not benevolent within the meaning of the statute's exemption. RCW 84.36.030 requires more to qualify for an exemption. The property for which the exemption is sought, must be used for "benevolent, . . . social services directed at persons of all ages."[5] Here, the findings establish that ASH provides "no other programs or services to its residents." Basically, it functions as any typical apartment complex. Further, there are no findings nor any evidence in the record that ASH provides any free housing or that rates are based on financial need. The government of the United States, through the HUD loan program, has already assumed a large share of the burden of meeting the need for low rent housing for college students and faculty. ASH has not shown that the exemption statute should be applied in its favor so as to impose an additional burden on local taxpayers.

ASH has also sought as exemption under former RCW 84.36.050, which in pertinent part, provides as follows:

Schools and colleges. The following property shall be exempt from taxation:

Property *owned or used for any nonprofit school or college* in this state solely for educational purposes or the revenue therefrom be devoted exclusively to the support and maintenance of such institution. Real property so exempt shall not exceed four hundred acres in extent and shall be used exclusively for college or campus purposes including but not limited to, buildings and grounds designed for the educational, athletic, or social programs of said institution, the housing of students, the housing of religious faculty, the housing of the chief administrator, athletic buildings and all other school or college facilities, the need for which would be nonexistent but

---

[5]Both parties on appeal have directed their arguments to the question of the proper construction of the word "benevolent." They fail to discuss the fact that the exemption is qualified additionally in the sense that the "use" be directed to "persons of all ages." In view of the fact that we conclude that the trial judge was correct in finding that ASH was not entitled to an exemption, we need not address that issue.

for the presence of such school or college and which are principally designed to further the educational functions of such college or schools.

(Italics ours.)

■ The parties contend that the exemption offered under this statute turns on the meaning of "used for." The trial court concluded that "used for" must be interpreted consistent with "owned" and read "for" to mean "by." The court reasoned that because ASH was not a "school" it was, therefore, not entitled to the exemption. This conclusion is consistent with our Supreme Court's interpretation of this statute's predecessor. *See Wilson's Modern Business College v. King Cy.*, 4 Wn.2d 636, 104 P.2d 580 (1940). In construing the predecessor statute, which is virtually identical to the present version, the court held that "[t]he intent of the legislature, manifestly, was to exempt all *property of a school or college, . . .*" (Italics ours.) *Wilson's Modern Business College*, 4 Wn.2d at 648. This clearly suggests an ownership interest by the school or college. Clark College has no property interest in the buildings in question. Thus, the exemption afforded by RCW 84.36.050 is not available to ASH.

Moreover, the absence of certain findings by the trial court is fatal to the interpretation of the statute urged by ASH. ASH argues that the appropriate interpretation is that the exemption exists if the property is merely used "for" a school or college. Even assuming that is the correct interpretation, there are no findings which establish nor does the record show that the statute's additional requirements have been satisfied. RCW 84.36.050 requires a showing of "need for [the housing of students] which would be nonexistent but for the presence of such school or college and which [is] principally designed to further the educational functions of such college . . ."

The trial court properly determined that ASH was not entitled to an exemption from real property taxation under either RCW 84.36.030 or RCW 84.36.050. Therefore, it is unnecessary for this court to determine whether the trial

court had jurisdiction to enjoin the collection of the 1978 and 1979 taxes.

The judgment of the trial court is affirmed in all respects.

REED, A.C.J., and PETRICH, J., concur.