Neil Gorrell, Chair Executive Ethics Board PO Box 40149 Olympia, WA 98504-0149
Dear Mr. Gorrell:
By letter previously acknowledged, you have requested our opinion on four questions, which we have combined into three and paraphrased as follows:
 1. In RCW 9.46.0209, does the use of the term "charitable or benevolent entity, including but not limited to a person or family in need," mean that a group of employees may conduct a raffle for any needy person or family the group chooses?
 2. If RCW 9.46.0209 means that a group of employees may conduct a raffle for any needy person or family, can that needy person or family be the family, family member, or friend of a state employee conducting the raffle? *Page 2 
 3. If RCW 9.46.0209 allows groups of executive branch employees to hold raffles to raise money for their own family and friends, how can it be recon-ciled with RCW 42.52.070, which prohibits the use of one's state position to secure special privileges for oneself, one's family member, or other persons?
 BRIEF ANSWERS
Your questions, taken together, ask for an analysis of the permissibility of charitable raffles conducted by executive branch state employees, [1] when the beneficiary of the raffle is a family member or friend of a state employee conducting the raffle. We conclude, in response to your questions as a whole, that an employee raffle may ultimately benefit specific individuals, including family members or friends of state employees, when the needy person or family has been designated by a "charitable or benevolent entity," such as occurs in adopt-a-child or adopt-a-family type programs. However, we conclude that the law presently does not authorize state employees to conduct a raffle for the purpose of raising funds that the employees will directly transmit to their family members or friends.
With respect to the specific questions, first, as used in RCW 9.46.0209, the term "charitable or benevolent entity, including but not limited to a person or family in need," does not mean that a group of employees may conduct a raffle for any needy person or family the group chooses. The statute authorizes a group of employees to conduct a raffle to raise funds for a "charitable or benevolent entity," an organization that has a legal identity independent from its members and that is dedicated to a specific type of purpose. A "person or family in need" serves to illustrate a type of charitable program operated by a "charitable or benevolent entity." It does not identify an independent class of recipients directly eligible to receive employee raffle funds.
Second, RCW 9.46.0209 does not mean that a group of state employees may vote to hold a raffle for any "person or family in need." Consequently, a group of employees may not vote to hold a raffle to raise funds directly for the family, family member, or friend of the state employee requesting the raffle, or for any other needy person or family.
Finally, RCW 9.46.0209 does not conflict with RCW 42.52.070. Provided a raffle is conducted in keeping with RCW 9.46.0209 and other applicable Gambling Act provisions, state employees are not using their positions to provide any special privilege when they conduct a charitable fund-raising raffle. Rather, they are acting to provide a benefit specifically authorized by law. Consequently, there is no conflict to reconcile between RCW 9.46.0209 and RCW 42.52.070. *Page 3 
 BACKGROUND
Your questions turn upon the construction of a provision of the state Gambling Act (RCW 9.46), and that provision's relationship with the state Ethics in Public Service Act (Ethics Act; RCW 42.52). The Gambling Act regulates gambling activities in Washington, including gambling conducted to raise money for charity. RCW 9.46.010 (legislative declaration of policy regarding gambling). The Ethics Act regulates certain conduct of state officers and state employees, with the objective of promoting honesty and integrity in government. RCW 42.52.900 (legislative declaration of policy regarding the Ethics Act).
Your initial questions primarily address a provision of the Gambling Act, RCW 9.46.0209. The Gambling Act authorizes a "bona fide charitable or nonprofit organization" to conduct various forms of gambling, including raffles, in accordance with the act and the rules of the Washington State Gambling Commission. RCW 9.46.0311. RCW 9.46.0209(1) defines the term "bona fide charitable or nonprofit organization" for purposes of the Gambling Act.[2] For the limited purpose of conducting raffles pursuant to RCW 9.46.0315, RCW 9.46.0209(2) provides a second, more limited, definition of "bona fide nonprofit organization."
Since 2007, this second definition has provided that a group of state employees satisfying certain requirements may qualify as a "bona fide nonprofit organization" and accordingly be authorized to conduct a raffle. Laws of 2007, ch. 452, § 1 (codified at RCW 9.46.0209(2)(b)). To qualify as a "bona fide nonprofit organization" for this limited purpose, the group of employees must obtain approval from the chief executive official of their agency, provide financial information regarding their raffle activity upon request, and limit raffle ticket purchases to employees of the agency. Additionally, and the focus of interest here, the group may conduct a raffle
 solely to raise funds for either the state combined fund drive, created under RCW 41.04.033; an entity approved to receive funds from the state combined fund drive; or a charitable or benevolent entity, including but not limited to a person or family in need, as determined by a majority vote of the approved group of employees. No person or other entity may receive compensation in any form from the group for services rendered in support of this purpose[.]
RCW 9.46.0209(2)(b)(ii) (emphasis added). Your initial questions concern the meaning of the italicized language.
Your final question concerns the interplay between RCW 9.46.0209(2)(b) and the Ethics Act's prohibition against special privileges. The Ethics Act prohibits state employees from engaging in any activity that conflicts with the proper discharge of their official duties, including using public resources for private gain. In particular, the special privileges prohibition, *Page 4 
RCW 42.52.070, prohibits state employees from using their positions to secure special privileges or exemptions for themselves, their immediate families, or other persons.
With that background, we turn now to the questions presented.
 ANALYSIS 1. In RCW 9.46.0209, does the use of the term "charitable orbenevolent entity, including but not limited to a person or familyin need," mean that a group of employees may conduct a raffle forany needy person or family the group chooses?
As used in RCW 9.46.0209, the term "charitable or benevolent entity, including but not limited to a person or family in need," does not mean that a group of employees may conduct a raffle for any needy person or family the group chooses. The statute authorizes a group of employees to conduct a raffle to raise funds for a "charitable or benevolent entity," an organization that has a legal identity independent from its members and that is dedicated to a specific type of purpose. A "person or family in need" serves to illustrate a type of charitable program operated by a "charitable or benevolent entity." It does not identify an independent class of recipients directly eligible to receive raffle funds. However, an employee raffle may ultimately benefit a needy person or family who has been designated to receive the raffle funds by a "charitable or benevolent entity."
Our goal when interpreting a statutory phrase is to ascertain and implement the legislature's intent. Dep't of Ecology v.Campbell Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our starting point is the plain meaning of the language. State v. J.P.,149 Wn.2d 444, 450, 69 P.3d 318 (2003). In the absence of statutory definitions, a term's plain and ordinary meaning can be determined from a standard dictionary. Am. Continental Ins. Co. v.Steen, 151 Wn.2d 512, 518, 91 P.3d 864 (2004). In addition, the term must be considered in the context of the statute in which it is found, together with related statutory provisions, and the statutory scheme as a whole. Burns v. City of Seattle,161 Wn.2d 129, 140, 164 P.3d 475 (2007). Where a statute's language is plain and unambiguous, the legislature's intent is apparent and the analysis is complete. J.P., 149 Wn.2d at 450. Where statutory language is ambiguous or conflicting, legislative intent is determined by applying recognized principles of statutory construction. Id. A term or statute is ambiguous if it can be reasonably interpreted in more than one way, but it is not ambiguous simply because different interpretations are conceivable. Am.Continental Ins. Co., 151 Wn.2d at 518.
Our analysis begins with examining the term "charitable or benevolent entity."[3] Black's Law Dictionary defines "entity" as "[a]n organization (such as a business or a governmental unit) that has a legal identity apart from its members." Black's Law Dictionary
573 (8th ed. 2004). This legal definition of "entity" is consistent with the two other uses of "entity" in *Page 5 
RCW 9.46.0209. Where the same term is used multiple times in a provision or statute, "the meaning is presumed to be the same throughout." Welch v. Southland Corp.,134 Wn.2d 629, 636, 952 P.2d 162 (1998). One use of "entity" occurs in the phrase "[n]o person or other entity." RCW 9.46.0209(2)(b)(ii). In RCW 9.46, the word "person" means "natural persons, corporations and partnerships and associations of persons." RCW 9.46.0289. Here "entity" represents organizations having an independent legal identity, beyond those identified by the term "person." The other use of "entity" appears in "an entity approved to receive funds from the state combined fund drive" (CFD). Here, "entity" refers to an organization that could be approved to receive funds from the CFD. Participation in the CFD is limited to organizations that have federally tax-exempt, not-for-profit status. WAC 357-55-110(4), (5). Thus, in this usage, "entity" likewise refers to an organization with a legal identity independent from its members. Based on the above, we conclude that "entity," as used in RCW 9.46.0209, also means an organization that has a legal identity independent from its members.
Turning to the modifying words "charitable or benevolent,"Webster's defines "charitable" as "generous in assistance to the poor," and "practicing or showing charity."Webster's 378. "Charity" is further defined as "the kindly and sympathetic disposition to aid the needy or suffering: liberality to the poor, to benevolent institutions, or to worthy causes." Webster's 378. The definition of "benevolent" is "marked by a kindly disposition to promote the happiness and prosperity of others or by generosity in and pleasure at doing good works," "arising from or prompted by motives of charity or a sense of benevolence: philanthropic." Webster's 204. Although "benevolent" may arguably have a broader meaning than "charitable," when the two words are used as a combined modifier, even joined by the disjunctive "or" as in "charitable or benevolent," courts commonly construe the two words to mean "charitable."[4]
Accordingly, the words "charitable or benevolent" describe a certain quality displayed in acts directed towards recipients, a quality of aiding, giving, or serving. Indeed, our state Supreme Court has said, "[t]he term `charity' in itself implies gift in some form; it implies the bestowal of goods or money, the rendition of services, or the awarding of privileges, free to the recipient, without gainful return or the anticipation of gainful return to the donors." Susmann v. Young Men's Christian Ass'n of Seattle,101 Wash. 487, 493, 172 P. 554 (1918) (considering whether an institution was a benevolent and charitable institution entitled to immunity from tort liability). Thus, as used in RCW 9.46.0209(2)(b)(ii), a "charitable or benevolent entity" is an organization that has a legal identity independent from its members and that is dedicated to a specific type of purpose, generally involving aiding, giving, or serving others without gainful return, or expectation of gainful return, from its actions. *Page 6 
Next, we examine the language "including but not limited to a person or family in need." The verb "include" means "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." Webster's 1143. In other words, saying "A includes B" means A is a larger group, class, or whole that encompasses B; B is a part, component, or example of A. Adding "but not limited to" denotes that the list of examples is not exhaustive. The list provides some examples illustrating the greater whole, but other examples may also exist. Hickle v. Whitney Farms,Inc., 148 Wn.2d 911, 924 n. 15, 64 P.3d 1244 (2003) (legislative definition stating "discarded . . . substances, including but not limited to certain pesticides" was "explicitly open ended," referring to any discarded substances, not merely pesticides);In re the Pers. Restraint Petition of Brown,143 Wn.2d 431, 459, 21 P.3d 687 (2001) ("This list, however, is not exclusive because of the statutory language `including but not limited to.'"). Accordingly, "including but not limited to a person or family in need" means that a "person or family in need" provides an example or illustration of a "charitable or benevolent entity," the noun phrase immediately preceding "including."
The term "charitable or benevolent entity, including but not limited to a person or family in need," thus signifies that a "person or family in need" would be an example of a "charitable or benevolent entity." However, this language creates an ambiguity because these two phrases have contradictory meanings. A "charitable or benevolent entity" is an organization that dispenses charity. Conversely, in common parlance, a "person or family in need" describes needy individuals, individuals who are impoverished, destitute, or otherwise disadvantaged. Such persons are the natural beneficiaries of charitable or benevolent entities, not charitable or benevolent entities themselves. They are recipients of charitable programs, rather than providers of charitable programs.
This ambiguous language is open to two interpretations. The statute could mean that, for purposes of RCW 9.46.0209, the definition of "charitable or benevolent entity" is expanded beyond any usual and ordinary meaning attributed to the term, to include a "person or family in need," even though needy persons would in no sense commonly fall within the definition of "charitable or benevolent entity." Under this interpretation, the statute would authorize a group of employees to raise funds directly for a needy person or family, essentially as a fourth class of recipient, in the same manner as the group may raise funds for a "charitable or benevolent entity," the "state combined fund drive," or an "entity approved to receive funds" therefrom. RCW 9.46.0209(2)(b). Alternatively, the statute could be read to mean that an employee raffle may ultimately benefit a "person or family in need" when the needy person or family is designated to receive the raffle funds through a program operated by a "charitable or benevolent entity." For the reasons explained below, we conclude that the latter interpretation is correct.
As previously explained, to ascertain what the legislature intended in RCW 9.46.0209, we must consider the broader statutory context of the Gambling Act . Burns, 161 Wn.2d at 140. The Gambling Act provides that the public policy of the state on gambling is "to promote the social welfare of the people by limiting the nature and scope of gambling activities and by strict regulation and control." RCW 9.46.010. Within the limitation on gambling activities, the Gambling Act authorizes a narrow range of activities to raise funds "for the promotion of bona *Page 7 
fide charitable or nonprofit organizations." RCW 9.46.010. However, the general policy of strict regulation and control still applies.See generally RCW 9.46.
In this regard, a pivotal regulatory requirement is that gambling for the purpose of charitable fund raising may only benefit an organization solely organized and operated for a recognized charitable purpose.[5] RCW 9.46.0209(1). This strict regulation and control of gambling for charitable fund-raising purposes logically would apply to no lesser degree to a group of employees conducting a gambling activity than to any other organization. Thus, by logical extension, an employee group may hold a raffle only to raise funds for an organization that is solely dedicated to a charitable purpose. Although a "charitable or benevolent entity" is such an organization, a "person or family in need" is not. Consequently, construing RCW 9.46.0209 to authorize employee raffles to raise funds directly for needy persons or families would conflict with the regulatory framework of the Gambling Act.
In addition, interpreting RCW 9.46.0209(2) to authorize employees to hold raffles that directly benefit "a person or family in need," effectively would require one to rewrite the statute and write out of the statute part of its language. By contrast, the conclusion that we reach is consistent with the structure of the sentence in which "charitable or benevolent entity, including but not limited to a person or family in need," appears. In relevant part, RCW 9.46.0209(2)(b)(ii) provides that a nonprofit organization includes a group of employees that
 [c]onducts a raffle solely to raise funds for either [1] the state combined fund drive . . .; [2] an entity approved to receive funds from the state combined fund drive; or [3] a charitable or benevolent entity, including but not limited to a person or family in need, as determined by a majority vote of the approved group of employees.
(Emphasis added.) The preposition "for" is followed by three noun clauses separated by semi-colons, enumerated above by [1], [2], and [3]. The conjunction or separates clauses [2] and [3]. The natural reading of this sentence is that the word "for" introduces a list of three items — each item describing a class of recipient eligible to receive raffle funds.
By contrast, it would be unnatural to read a "person or family in need" as an independent class of recipient eligible to receive raffle funds directly. In fact, to do so would require substantially revising the sentence. First, a semicolon rather than a comma would necessarily separate "entity" from the words "a person or family in need." Second, the conjunction "or" would have to be moved from its current location between clauses [2] and [3], to separate clause *Page 8 
[3] from a new clause [4] that would identify "a person or family in need" as an independent class of recipient of raffle funds. Finally, the words "including but not limited to" would need to be struck out completely. In particular, this last revision would stand in direct contradiction to the presumption that the legislature does not include unnecessary language when it enacts legislation.McGinnis v. State, 152 Wn.2d 639, 645-46, 99 P.3d 1240 (2004). Since as RCW 9.46.0209(2) is presently drafted, a "person or family in need" is not an independent recipient of raffle funds, we conclude that the proper reading of the statute is that it refers to a "person or family in need" receiving funds "through a charitable or benevolent entity."
Finally, this interpretation is not only consistent with the regulatory framework of the Gambling Act and the structure and language of the provision, it is also supported by the legislative history of Laws of 2007, ch. 452. Notably, during public testimony in support of allowing state employees to conduct charitable fund-raising raffles, adopt-a-family was one of two charitable programs expressly mentioned. See H.B. Rep. on H.B. 1599, 60th Leg., Reg. Sess. (Wash. 2007). In an adopt-a-family or adopt-a-child charitable program, a charitable organization solicits donor-benefactors and matches them to needy recipient families or individuals screened and selected by the organization.[6] A donor-benefactor may select a family or individual from among those designated by the charitable organization, and donate funds to the organization which will ultimately be given to the needy person or family. Construing a "charitable or benevolent entity, including but not limited to a person or family in need" to mean that the statute expressly contemplates raffles for the benefit of adopt-a-family type charitable programs is consistent with this legislative history, the structure of the provision, and the regulatory framework of the Gambling Act as a whole.
In conclusion, as used in RCW 9.46.0209, the term "charitable or benevolent entity, including but not limited to a person or family in need," means that a "person or family in need" illustrates a type of charitable program operated by a "charitable or benevolent entity," rather than an independent class of recipients directly eligible to receive raffle funds. An employee raffle may ultimately benefit a needy person or family who has been designated to receive raffle funds by a "charitable or benevolent entity."
2. If RCW 9.46.0209 means that a group of employees may conducta raffle for any needy person or family, can that needy person orfamily be the family, family member, or friend of a state employeeconducting the raffle?
As explained above, RCW 9.46.0209 does not authorize a group of state employees to conduct a raffle to raise funds to be provided directly to any "person or family in need" selected by the employee group. As used in the term "charitable or benevolent entity, including but not limited to a person or family in need," a "person or family in need" is not an independent class of recipient directly eligible to receive raffle funds. An employee group may conduct a fund-raising raffle that ultimately benefits a needy person or family who has been designated to *Page 9 
receive the raffle funds by a "charitable or benevolent entity," such as occurs in adopt-a-child or adopt-a-family type charitable programs. In other words, an employee group may raise funds for a "charitable or benevolent entity" that designates those funds to flow through it to a needy person or family.
Consequently, a group of employees may not vote to hold a raffle to raise funds directly for the family, family member, or friend of the state employee requesting the raffle, anymore than it could for any other needy person or family. That being said, RCW 9.46.0209 and the Gambling Act do not impose any additional limitations or requirements on who a "charitable or benevolent entity" may designate to be a "person or family in need." As a result, RCW 9.46.0209 does not otherwise prohibit an employee group from donating raffle proceeds through a "charitable or benevolent entity" to a "person or family" that has been designated by that entity to be eligible, including the family, family member, or friend of the state employee requesting the raffle.
3. If RCW 9.46.0209 allows groups of executive branch employeesto hold raffles to raise money for their own family and friends, howcan it be reconciled with RCW 42.52.070, which prohibits the use ofone's state position to secure special privileges for oneself, one'sfamily member, or other persons?
Provided that employees conduct their raffle in keeping with RCW 9.46.0209 and other applicable Gambling Act provisions, the employees do not receive any special privilege, and there is no conflict between RCW 9.46.0209 and RCW 42.52.070. RCW 42.52.070 provides that state employees may not use their positions "to secure special privileges or exemptions" for themselves, their spouses, children, parents, or other persons. A special privilege or exemption is a privilege or exemption to which the person is not legally entitled.[7] A special privilege involves being allowed to do something that would otherwise be prohibited, while a special exemption involves being relieved from doing something that would be otherwise mandated. See In re theRecall of Feetham,149 Wn.2d 860, 867-70, 72 P.3d 741 (2003) (finding prima facie violations of municipal officer "special privileges or exemptions" analog RCW 42.23.070(1) where mayor (1) directed town building inspector not to enforce building code and (2) removed permit file regarding his own property and directed town employee not to report missing file). A special privilege may arise if an organization or corporation is granted preferential access to state agency facilities or employees without adequate justification for that preference. See Executive Ethics Advisory Board Opinions 04-02; 00-11; 99-02. *Page 10 
Executive branch state employees are not exempt from the special privileges prohibition when conducting fund-raising raffles pursuant to RCW 9.46.0209. However, when employees conduct a raffle in compliance with RCW 9.46.0209 and the other applicable requirements of the Gambling Act, the employees are not using their positions to provide a special privilege to themselves or others. They are not doing something that would otherwise be prohibited by law, or providing a benefit that the law does not authorize. Instead, they are acting in accordance with the law.
In conclusion, RCW 9.46.0209 authorizes state employees to conduct a raffle to raise funds for a "charitable or benevolent entity." However, an employee raffle may ultimately benefit specific individuals, including family members or friends of state employees, when the needy person or family has been designated to receive the raffle funds by a "charitable or benevolent entity," such as occurs in adopt-a-child or adopt-a-family type programs.
We trust that the foregoing will be useful to you.
ROBERT M. McKENNA Attorney General
ALLYSON ZIPP Deputy Solicitor General
wros *Page 1 
RCW 9.46.0209
"Bona fide charitable or nonprofit organization."
(1)(a) "Bona fide charitable or nonprofit organization," as used in this chapter, means:
 (i) Any organization duly existing under the provisions of chapter 24.12, 24.20, or 24.28 RCW, any agricultural fair authorized under the provisions of chapters 15.76 or 36.37 RCW, or any nonprofit corporation duly existing under the provisions of chapter 24.03 RCW for charitable, benevolent, eleemosynary, educational, civic, patriotic, political, social, fraternal, athletic or agricultural purposes only, or any nonprofit organization, whether incorporated or otherwise, when found by the commission to be organized and operating for one or more of the aforesaid purposes only, all of which in the opinion of the commission have been organized and are operated primarily for purposes other than the operation of gambling activities authorized under this chapter; or
 (ii) Any corporation which has been incorporated under Title 36 U.S.C. and whose principal purposes are to furnish volunteer aid to members of the armed forces of the United States and also to carry on a system of national and international relief and to apply the same in mitigating the sufferings caused by pestilence, famine, fire, floods, and other national calamities and to devise and carry on measures for preventing the same.
(b) An organization defined under (a) of this subsection must:
 (i) Have been organized and continuously operating for at least twelve calendar months immediately preceding making application for any license to operate a gambling activity, or the operation of any gambling activity authorized by this chapter for which no license is required;
 (ii) Have not less than fifteen bona fide active members each with the right to an equal vote in the election of the officers, or board members, if any, who determine the policies of the organization in order to receive a gambling license; and
 (iii) Demonstrate to the commission that it has made significant progress toward the accomplishment of the purposes of the organization during the twelve consecutive month period preceding the date of application for a license or license renewal. The fact that contributions to an organization do not qualify for charitable contribution deduction purposes or that the organization is not otherwise exempt from payment of federal income taxes pursuant to the internal revenue code of 1954, as amended, shall constitute prima facie evidence that the organization is not a bona fide charitable or nonprofit organization for the purposes of this section.
 (c) Any person, association or organization which pays its employees, including members, compensation other than is reasonable therefor under the local prevailing wage scale shall be deemed paying compensation based in part or whole upon receipts relating to gambling activities authorized under this chapter and shall not be a bona fide charitable or nonprofit organization for the purposes of this chapter. *Page 2 
(2) For the purposes of RCW 9.46.0315 and 9.46.110, a bona fide nonprofit organization also includes:
 (a) A credit union organized and operating under state or federal law. All revenue less prizes and expenses received from raffles conducted by credit unions must be devoted to purposes authorized under this section for charitable and nonprofit organizations; and
 (b) A group of executive branch state employees that:
 (i) Has requested and received revocable approval from the agency's chief executive official, or such official's designee, to conduct one or more raffles in compliance with this section;
 (ii) Conducts a raffle solely to raise funds for either the state combined fund drive, created under RCW 41.04.033; an entity approved to receive funds from the state combined fund drive; or a charitable or benevolent entity, including but not limited to a person or family in need, as determined by a majority vote of the approved group of employees. No person or other entity may receive compensation in any form from the group for services rendered in support of this purpose;
 (iii) Promptly provides such information about the group's receipts, expenditures, and other activities as the agency's chief executive official or designee may periodically require, and otherwise complies with this section and RCW 9.46.0315; and
 (iv) Limits the participation in the raffle such that raffle tickets are sold only to, and winners are determined only from, the employees of the agency.
(3) For the purposes of RCW 9.46.0277, a bona fide nonprofit organization also includes a county, city, or town, provided that all revenue less prizes and expenses from raffles conducted by the county, city, or town must be used for community activities or tourism promotion activities.
[1] Within this Opinion, the terms "state employees" or "employees" refer to executive branch state employees.
[2] The full text of RCW 9.46.0209 is attached to this Opinion for ease of reference.
[3] This Opinion defines "charitable or benevolent entity" as used in RCW 9.46.0209. That definition is applicable to only that statute.
[4] For example, the Court of Appeals has said, "[w]hile we recognize that other jurisdictions have chosen to give `benevolent' a broader meaning than `charity', we choose to follow the line of cases that have concluded that the term `benevolent' is synonymous with `charitable.'" Adult Student Housing, Inc. v. Dep't of Revenue,41 Wn. App. 583, 592, 705 P.2d 793 (1985) (considering tax exemption) (citations omitted). In the area of trusts, "a trust for `charitable and benevolent purposes,' or even for `charitable or benevolent purposes,' would likely be interpreted as intended to include only charitable purposes." Restatement (Third) Trusts § 28, cmt. a (emphasis added).
[5] In particular, qualifying purposes are those authorized for charitable and nonprofit organizations under RCW 9.46.0209, to wit: "charitable, benevolent, eleemosynary, educational, civic, patriotic, political, social, fraternal, athletic or agricultural purposes," as well as purposes "to furnish volunteer aid to members of the armed forces of the United States and also to carry on a system of national and international relief and to apply the same in mitigating the sufferings caused by pestilence, famine, fire, floods, and other national calamities and to devise and carry on measures for preventing the same." RCW 9.46.0209(1)(a).
[6] See, e.g., http://www1.usw.salvationarmy.org/usw/www_usw_cascade.nsf /ce952dea4507ee7780256cf 4005d2254/e641fe1ec26712988025713f00823076? OpenDocument(last visited Jan. 27, 2010).
[7] This definition of "special privilege or exemption" is consistent with that in place when the Ethics Act was originally enacted. In 1993, the legislature established the Commission on Ethics in Government and Campaign Practices and directed it to study and make recommendations regarding, among other issues, ethics in government. Laws of 1993, ch. 5, § 1. In its recommendations report, the Commission described the issue of special privileges and exemptions as involving "seeking a privilege or exemption to which the person is not legally entitled." Commission on Ethics in Government and Campaign Practices Report at 11 (1994). In 1994, the legislature enacted the Ethics in Public Service Act, which adopted the recommendations of the Commission without significant amendment. Laws of 1994, ch. 154 (codified at RCW 42.52).