# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ERWIN CHAPPEL; CARDELL THOMPSON; NORTHWEST ASSOCIATION OF RETIRED BLACK FIRE FIGHTERS, a Washington state corporation; CLARENCE WILLIAMS, <br><br> Respondents/ Cross Appellants, <br><br> v. <br><br> DOUGLAS JOHNSON; SEATTLE BLACK FIREFIGHTERS ASSOCIATION, a non-profit corporation; JULIANA EDWARDS; HILTON JONES; CHRISTIANSON DOCKTER, <br><br> Appellants/Cross Respondents | No. 86392-4-I <br><br> DIVISION ONE <br><br> PUBLISHED OPINION |

BIRK, J. — This appeal arises from a dispute between certain active and retired firefighter members of the Seattle Black Firefighters Association (SBFFA) and members of the SBFFA Board (Board). SBFFA members originally brought this action seeking, among other relief, to enjoin the SBFFA from selling the house it has owned in Seattle's Central District since the 1970s, and has historically used as a center of its charitable, community, and other activities. The superior court reached four conclusions that the parties challenge on appeal: (1) that retired black firefighters remained members of the SBFFA with voting rights, (2) that, though the Board violated certain requirements of the Washington Nonprofit Corporation Act,

chapter 24.03A RCW (NpCA), the members did not prove the Board committed any fiduciary breach, (3) that, though it has long contributed charitable works to the community, the SBFFA is not a charitable corporation whose property is subject to restrictions on property held for charitable purposes, and (4) that costs were not taxable under RCW 4.84.030. Finding no error, we affirm.

I

In 1959, Seattle hired its first black firefighter, Claude Harris, who eventually became the first black fire chief. It would take eight years before the department hired more black firefighters. These firefighters created the SBFFA to fight against racism in the department and the community at large. The SBFFA is a non-profit corporation. The SBFFA elected its first president in 1969 and filed its articles of incorporation 10 years later, in 1979. The SBFFA's purposes to support black firefighters in the fire service, serve the community through charitable works, and raise the skill and efficiency of the fire service are reflected in its articles of incorporation and its bylaws, discussed in greater detail below. In the 1970s, the SBFFA acquired a house in Seattle's Central District, at 2302 East Pike Street.

Harris was elected as the SBFFA's first president in 1969. In 1970, Clarence Williams was elected as the SBFFA's second president. He was president for 10 years. During his tenure, the SBFFA filed its articles of incorporation, bought the SBFFA house, and solidified its position in the community as an organization that helped the community fight against racism.

Harris and Williams were among the 16 witnesses who testified at trial. Some of the community activities the SBFFA engaged in included to

- Allow the Seattle Black Police Officers Association to establish its first headquarters at the SBFFA house;
- Allow the SBFFA house to be used by the Black Transit Worker Association;
- Use the SBFFA house as the headquarters for the "Rides To the Polls" program;
- Establish a voter registration program that was operated in the SBFFA house;
- Allow community organizations to use the SBFFA house for meetings;
- Generously donate to charitable organizations and community members who were fighting against racism and supporting the black community;
- Provide free CPR training to the community;
- Create an advisory board made up of community leaders and activists;
- Allow Mt. Calvary Church to conduct Sunday school classes at the SBFFA house;
- Provide training exercises to potential new recruits and new hires; and
- Hold monthly breakfast meetings at the house for retired members.

The SBFFA also engaged in political activities, including helping Seattle Mayor Wes Uhlman resist a recall effort.

Starting in 2020, Douglas Johnson began serving as president of the SBFFA. Johnson described challenges facing the organization and stated that because of waning interest in the SBFFA house and its need for repairs, a special committee recommended selling the house. The SBFFA house was listed for sale on or about January 25, 2022. In February 2022, Erwin Chappel, a captain with the Seattle Fire Department and a member of the SBFFA, and others filed a complaint against Johnson and others. The complaint alleged breach of fiduciary

3

duty and violation of the nonprofit statute, and sought injunctive and declaratory relief.

In the lawsuit, Chappel sought to block the pending sale of the SBFFA house, which Johnson asserted had been authorized by a vote of the membership. At trial, the superior court heard conflicting testimony about whether proper procedures were followed before the alleged vote. No witnesses were able to testify who made the motion to sell the house, who seconded the motion, or what the language of such a motion was. The meeting minutes did not provide clarity.

Chappel also asserted that retired firefighter members were entitled to full membership rights. During the litigation, the SBFFA adopted a "policy," which purported to strip retired firefighter members of their voting rights. No meeting minutes were presented showing a vote to strip the voting rights, despite a provision in the bylaws requiring a majority vote of the SBFFA membership to amend the bylaws. The SBFFA also returned some dues payments tendered by retired members.

At the conclusion of the bench trial, the court held that the request to enjoin the sale of the house was moot because the sale had not been completed and the house was not on the market. Relevant to the issues presented on appeal, the superior court ruled that under the bylaws, certain retired firefighters were members with voting rights, and the SBFFA should not reject dues payments from its members. The superior court ruled that the Board had violated the NpCA in several ways. The house sale had not been properly authorized by a vote, and any future sale would require a quorum, notice, proper procedure, and a vote of

the membership. But the court held that Chappel had not met his burden of proof as to the breach of fiduciary duty claim and that Board members were not individually liable for any of Chappel's claims. The superior court held that the SBFFA was "not a charitable corporation within the meaning of the [NpCA]." As a result, the house is not subject to legal restrictions on the disposition of charitable property. Finally, the superior court denied Chappel's motion for costs as prevailing party.

Johnson timely appealed. On appeal, Johnson argues that the superior court erred in its interpretation of the SBFFA bylaws by granting membership rights to retired members behind on their dues and to members who were not parties to the lawsuit. Chappel cross appealed, arguing the superior court erred by not concluding the Board breached its fiduciary duty, by ruling the SBFFA was not a charitable corporation, and by denying Chappel's motion for costs. The Attorney General of the State of Washington filed an amicus curiae brief addressing SBFFA's status as a charitable corporation and the duties owed by the Board.

II

Johnson argues that the superior court erred in declaring retired members of the SBFFA "retain their membership and voting rights indefinitely," despite "not paying dues and not being in good standing." Johnson asserts that the superior court's interpretation of the SBFFA's bylaws was counter to the evidence presented at trial, that the superior court did not have jurisdiction to extend membership rights to individuals not party to the lawsuit, and that members must pay dues to retain membership. We disagree.

5

A

Johnson contends that the superior court erred in its interpretation of the bylaws based on the testimony at trial. Chappel answers that Johnson provided only a partial verbatim report of proceedings, that Johnson's factual arguments should therefore be disregarded, and that we should treat the superior court's findings as true on appeal. We agree with Chappel.

Under RAP 9.2(b), if the "party seeking review intends to urge that a verdict or finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed verdict or finding." See Bulzomi v. Dep't of Lab. & Indus., 72 Wn. App. 522, 525, 864 P.2d 996 (1994) ("The party seeking review has the burden of perfecting the record so that the reviewing court has before it all of the relevant evidence. An insufficient record on appeal precludes review of the alleged errors." (Citation omitted.)). If the trial record provided on appeal is incomplete, our "ability to fairly evaluate the findings" is "compromised," and we treat the superior court's findings of fact as true. In re Parentage of A.F.J., 161 Wn. App. 803, 806 n.2, 260 P.3d 889 (2011), aff'd, 179 Wn.2d 179, 314 P.3d 373 (2013).

The report of proceedings submitted for our review includes excerpted testimony from six witnesses. The trial minutes indicate that 16 witnesses were called at trial. We cannot review the propriety of the superior court's factual determinations without an adequate report of proceedings. The superior court

relied on testimony establishing that the SBFFA is a "brotherhood" in which membership does not cease, ruling,

> [I]t [is] clear to me that the expectation was that once you're a Seattle Black firefighter, once you're a member of the Association, it becomes a brotherhood. You're always a member, right? And so, that dues issue was never contemplated to be, like, a thing that would—would kick you out. And that was very consistent for me with—when I had the opportunity to listen to these founding members, that was very clear to me. You could—it was palpable. I mean, you could see it in the demeanor. You could feel it in the energy. Like, once a part of the brotherhood, always a part.[1]

The testimony on which this finding was based was in large part not supplied to this court.

The superior court also based its analysis of the membership issue on the bylaws. Its conclusion that retired members do not lose their membership, even if they neglect to pay dues, is a facially reasonable way to read the bylaws. The membership article of the bylaws states,

> Membership in the [SBFFA] shall be limited to the members who are professional [firefighters,] *current or retired*, of good moral character and in good standing in the Seattle Fire Department and shall be bound by the provisions of these [SBFFA bylaws]. [Firefighters] wishing to become a member of the [SBFFA] shall make an application on forms as provided by the association. New members must be approved by a majority of the membership present at any regular meeting.

(Emphasis added.) Article 13, dues and revenues, states that "[r]etired members dues will be one half the amount of active duty members," and that "[r]etired

---

[1] A trial court's oral ruling may be used to complement and explain written findings. Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 801, 432 P.3d 821 (2018).

members may pay dues by check or money order payable to: SBFFA." The bylaws do not state that membership is contingent on payment of dues.

Meanwhile, other provisions of the bylaws contemplate that members might continue as members even if they are behind on their dues. Article 12, § 5, on discipline and misconduct, requires any suspended or expelled members seeking reinstatement to pay "all back dues (up to one year) and assessments unpaid." In article 13, § 4, the bylaws provide for the possibility that the SBFFA might provide loans to members, but they make loan requests contingent on the member being "in good standing (all dues current)."

"The governing documents of a corporation are interpreted in accordance with accepted rules of contract interpretation." Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 273-74, 279 P.3d 943 (2012). Relevant to the superior court's analysis of the bylaws, the focus is on "the reasonable meaning of the contract language to determine the parties' intent." Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014). Courts view a contract "as a whole, interpreting particular language in the context of other contract provisions." Id. at 713. The superior court adopted a reasonable reading of the bylaws as providing membership to any members admitted, retired or otherwise, regardless of whether they are current on their dues. In the absence of the record on which the superior court relied, and with its adopting a reasonable reading of the bylaws, we decline to revisit its reasonable interpretation.

8

B

Johnson also challenges the superior court's ruling on membership on procedural grounds, contending that the superior court lacked jurisdiction to extend membership rights to individuals who were not parties to the lawsuit, that its ruling erroneously imposed membership on persons who had not consented to membership, and that by statute members must pay dues to retain membership.

Johnson argues that the court lacked jurisdiction to confer membership on retired members who did not directly participate in the litigation. We disagree. As a starting point, as courts of general jurisdiction, superior courts have the power to determine all matters, legal and equitable, unless those powers are expressly denied. Bour v. Johnson, 80 Wn. App. 643, 647, 910 P.2d 548 (1996). The NpCA contemplates that a list of members entitled to vote at a meeting must be available for inspection by any member. RCW 24.03A.405(1)-(2). The NpCA authorizes the court to grant relief in aid of a member's inspection of the list of members entitled to vote. RCW 24.03A.405(4). In certain circumstances, a member may petition a court to determine the validity of a corporate action. RCW 24.03A.966(1). The court in that case may "make such orders" as "may be just and proper," and if no valid corporate action has been taken, may order a meeting in accordance with RCW 24.03A.964. RCW 24.03A.966(2). And RCW 24.03A.964(2) allows the court to "determine the right to vote at the meeting of persons claiming that right." Taken together, these provisions afforded the superior court lawful authority to determine who were members of SBFFA entitled to vote at a meeting pursuant to the NpCA and the SBFFA bylaws.

Next, Johnson cites RCW 24.03A.325 as prohibiting the imposition of membership without explicit consent, and he cites the notice requirements for class action lawsuits under CR 23(b)(3). Johnson argues that the superior court's order imposes membership without "affirmative acceptance." The superior court determined that the bylaws did not make membership contingent on staying current on dues. Then, the court found, "Per the bylaws, retirement of black firefighters does not divest them of their membership in SBFFA or their voting rights." Contrary to Johnson's argument, the superior court's ruling did not vest membership in persons who had not consented. Rather, it ruled that, under the bylaws, persons who had been members continued as members.

Finally, Johnson makes a statutory argument that the superior court ruling improperly granted membership and voting rights to members who have not paid their dues. Johnson highlights RCW 24.03A.360 as providing "clear guidelines for imposing and enforcing membership dues." But RCW 24.03A.360 defers to individual nonprofit corporations' articles of incorporation or bylaws to authorize, assess, and impose fees. The superior court found that membership and its corresponding rights were not contingent on the payment of dues. The court noted that the SBFFA may revise this policy and may do so through a bylaws amendment through a majority vote of its membership.

We affirm the superior court's ruling that the retired black firefighters remained members of the SBFFA.

10

III

On cross-appeal, Chappel argues that the superior court's conclusion that Board members did not breach their fiduciary duties or act negligently is contrary to its findings that "describe in great detail" the Board's "illegal breach of the non-profit statute and several provisions of the SBFFA bylaws." We disagree.

Whether an individual owes a legal fiduciary duty is a question of law, but breach of a legal duty is generally a question of fact. Lodis v. Corbis Holdings, Inc., 172 Wn. App. 835, 857, 292 P.3d 779 (2013). Because we were provided with an incomplete record for review, and Chappel does not challenge the superior court's findings of fact, we decline to revisit generally the superior court's conclusion that Chappel failed to meet his burden of proving breach of fiduciary duty or negligence. We confine our review to whether the Board's statutory and bylaws violations compel a finding of breach of fiduciary duty or negligence. See Custody of A.F.J., 161 Wn. App. at 806 n.2 (with an incomplete record, our ability to "fairly evaluate the findings" is "compromised"). We conclude that they do not.

The NpCA was revised in 2021, with an effective date of January 1, 2022. See LAWS OF 2021, ch. 176. Because the Board's conduct spanned before and after the implementation date of the new NpCA, the superior court analyzed Chappel's breach of fiduciary duty claim under the old and new NpCAs. We begin by describing the standards required of directors under each.

The old NpCA, former RCW 24.03.540 (1989), does not specifically address director liability, but under the new NpCA, a "director of a nonprofit corporation is not liable to any member of the nonprofit corporation for any action taken, or any

failure to take action, as a director except" for a "knowing infliction of harm upon the member; or an intentional violation of criminal law or this chapter that results in harm or loss to the member." RCW 24.03A.540(5). Both laws describe a statutory director standard of care. Under the old NpCA, a director owed duties of acting in "good faith, in a manner such director believes to be in the best interests of the corporation, and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances." Former RCW 24.03.127 (1986). Under the new NpCA, each director shall act "in good faith" "[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances" and "[i]n a manner the director reasonably believes to be in the best interests of the nonprofit corporation." RCW 24.03A.495(1). The language of the two statutes is not identical, but under both directors owe duties of good faith, ordinary prudence, and a reasonable belief that their actions are in the corporation's best interests.

The superior court ruled that the Board violated the NpCA and the bylaws in several ways. First, the sale of the SBFFA house was a fundamental transaction under RCW 24.03A.010(31) for which the notice provisions of RCW 24.03A.890 were required to be followed, but were not followed. The deficiencies included both lack of notice to all SBFFA members and inadequate substantive notice including the purpose of the meeting, a description of the disposition, its terms and conditions, and the consideration to be received by the corporation. See RCW 23.03A.890(4). Second, by purporting to eliminate the eligibility of retired members to vote, the Board violated their voting rights under RCW 24.03A.345, .435, and

12

.695, and under the bylaws as properly interpreted. Third, the corporation failed to keep Board meeting minutes, six years of financial statements, and other documents, in violation of RCW 24.03A.210(1). Fourth, Johnson's simultaneously acting as the president and the secretary of the SBFFA violated RCW 24.03A.585(3). But the trial court ruled that Chappel had "not met their burden as to the breach of fiduciary duty claim, under either the old or the new statute." In its oral ruling, the superior court described the SBFFA as historically run "very informally," and said of the Board, "I don't find anything malicious, nefarious, an[d]—I [don't] even find any negligence. I really don't."

Chappel argues that "[i]f the [b]oard breached their duties under the non-profit statutes and SBFFA bylaws, they certainly breached their fiduciary duties." To support this proposition, he cites Senn v. Northwest Underwriters, Inc., 74 Wn. App. 408, 875 P.2d 637 (1994). In Senn, we held the defendant director and officer liable for breach of fiduciary duty because they committed "blatant" fraud, diverting $12.3 million in company funds and insurance premiums over 18 months, much of which went to themselves or their family. 74 Wn. App. at 411, 413, 418-19. "Senn is consistent with Washington case law, which generally holds that a corporate officer cannot be held personally liable unless the officer knowingly and in bad faith commits or condones a wrongful act in the course of carrying out his or her duties." Annechino v. Worthy, 162 Wn. App. 138, 147, 252 P.3d 415 (2011), aff'd, 175 Wn.2d 630, 290 P.3d 126 (2012).

Washington courts will not substitute their judgment for that of corporate directors absent evidence of fraud, dishonesty, or incompetence. Riss v. Angel,

13

131 Wn.2d 612, 632, 934 P.2d 669 (1997). For comparison, Delaware has suggested that failure to comply with procedural requirements is not necessarily in itself a fiduciary breach. See Oberly v. Kirby, 592 A.2d 445, 465 (Del. 1991) ("[T]he falsification of a corporation's minutes might constitute a breach of a director's duty of candor. Here, however, the appellants offered no evidence that anyone was or even could have been deceived by the alleged falsification."); In re McDonald's Corp. Stockholder Derivative Litig., 291 A.3d 652, 692 (Del. Ch. 2023) ("failure to keep minutes can be a cause for suspicion" but "the lack of minutes is not sufficient to support an inference of bad faith."). The superior court could validly conclude that the Board violated provisions of the NpCA and the bylaws, but without breaching fiduciary duties or committing negligence.

Chappel secured remedies from the superior court to address the Board's violative conduct. The court ordered future elections, ordered enforcement of the bylaws, clarified membership and voting rights, and directed the SBFFA to hold a compliant meeting to determine the future of the SBFFA house. And no sale occurred as a result of the corporate acts affected by the violations the trial court found. Chappel did not show that the notice, voting, records, and officer violations were the product of or were themselves a fiduciary breach, as opposed to the result of traditionally informal management. With the incomplete record before us, and the nature of the statutory violations committed, we have no basis to overrule the

superior court's conclusion that Chappel failed to meet his burden of proof as to his claims for breach of fiduciary duty and negligence.[2]

IV

Property held for charitable purposes by a nonprofit corporation "may not be diverted from charitable purposes." RCW 24.03A.900(1). And, the law restricts the disposition of charitable property. See generally RCW 24.03A.900(2)-(6). Chappel argues that the SBFFA was a " '[c]haritable [c]orporation' organized and operated for charitable purposes," and as a result, "[t]he SBFFA house was 'property held for charitable purposes.' " Chappel argues the superior court erred "by concluding that the Board could unilaterally redefine property held for charitable purposes as non-charitable and redefine a charitable corporation to a non-charity." In an amicus curiae brief, the Attorney General argues that the superior court erred in finding that the SBFFA is not a charitable corporation because its "articles of incorporation plainly state that its purpose is charitable, and charitable corporations cannot change their purpose without following specific statutory provisions." By contrast, Johnson asserts the "SBFFA was never a charitable organization." Johnson is correct.

A

The new NpCA created a new classification, "charitable corporations."[3] RCW 24.03A.010(5). Charitable corporations are domestic nonprofit corporations

---

[2] In affirming the trial court's conclusion that the statutory violations in this case did not amount to a fiduciary breach, we do not foreclose the possibility that a statutory violation could amount to a fiduciary breach.

[3] Rather than recognizing "charitable corporations," the old NpCA put limits on the disposition of property held by a nonprofit for charitable purposes. Former

"operated primarily or exclusively for one or more charitable purposes." Id. Charitable purpose is defined as a purpose that either (a) would "make a corporation organized and operated exclusively for that purpose eligible to be exempt from taxation under section 501(c)(3) of the internal revenue code," see 26 U.S.C. § 501(c)(3), or (b) "is considered charitable under applicable law other than this chapter or the internal revenue code."[4]  RCW 24.03A.010(6).  Property held by a charitable corporation is considered property "held for charitable purposes," and is subject to restrictions under the NpCA.  RCW 24.03A.165.  It is clear from the statutory scheme that property held for charitable purposes must ultimately serve a charitable purpose.

To determine if a corporation, not registered under 26 U.S.C. § 501(c)(3),[5] is "charitable under applicable law" under RCW 24.03A.010(6), we look to the intent expressed in its articles of incorporation and bylaws, applying traditional

RCW 24.03.225(3) (2020).  In the event of a dissolution, the old NpCA said assets held by the corporation "subject to the limitation permitting their use only for charitable, religious, eleemosynary, benevolent, educational, or similar purposes" shall be "transferred or conveyed to corporations or organizations "engaged in activities substantially similar to those of the dissolving corporation."  Id.  And, under former law, a nonprofit corporation holding assets usable only for charitable or similar purposes was also defined as a "trustee" for purposes of chapter 11.110 RCW.  Former RCW 11.110.020 (2020).

[4] In chapter 19.09 RCW, "The term 'charitable' is used in its generally accepted legal sense and includes relief of the poor, the distressed, or the underprivileged; advancement of religion; advancement of education or science; erecting or maintaining public buildings, monuments, or works; lessening the burdens of government; lessening neighborhood tensions; eliminating prejudice and discrimination; defending human and civil rights secured by law; and combating community deterioration and juvenile delinquency."  RCW 19.09.020(3).

[5] Because the SBFFA is not registered under section 501(c)(3) of the internal revenue code, 26 U.S.C. § 501(c)(3), we do not address the analysis that would apply to a corporation that is so registered.

principles of contract interpretation. The "creation and administration of a charitable trust lies with the settlor's intent." Niemann v. Vaughn Cmty. Church, 154 Wn.2d 365, 375, 113 P.3d 463 (2005). Again, the governing documents of a corporation are interpreted in accordance with accepted rules of contract interpretation.[6] Roats, 169 Wn. App. at 273-74.

The purpose of contract interpretation is to determine the intent of the parties. Id. at 274. Under the "context rule" courts look to extrinsic evidence, including the subject matter and objective of the contract, the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties, and the reasonableness of the parties' respective interpretations. Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 502, 115 P.3d 262 (2005). Contract interpretation is a question of law only when "the interpretation does not depend on the use of extrinsic evidence," or "only one reasonable inference can be drawn from the extrinsic evidence." Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). Otherwise, "[c]ontract interpretation is normally a question of fact for the fact-finder." Spradlin Rock

---

[6] In other contexts, Washington courts have held that even if a corporation's governing documents clearly show charitable intent, the conduct of the organization may still prove that it is not charitable. See Miller v. Mohr, 198 Wash. 619, 634-35, 89 P.2d 807 (1939), overruled on other grounds by Pierce v. Yakima Valley Mem'l Hosp. Ass'n, 43 Wn.2d 162, 260 P.2d 765 (1953) (to determine hospital's charitable status, for purposes of tort liability, the court first examined the hospital's articles of incorporation and bylaws as a matter of law, and when evidence was introduced that showed the hospital "did not observe the basic principles laid down in its" organizing documents, a matter of fact was raised to be determined by a factfinder); Adult Student Hous., Inc. v. Dep't of Revenue, 41 Wn. App. 583, 591-92, 705 P.2d 793 (1985) (examining nonprofit organization's activities, not its incorporating documents, to determine if it was a charity for purposes of tort liability).

Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County, 164 Wn. App. 641, 654-55, 266 P.3d 229 (2011).

B

In its articles of incorporation, the SBFFA's stated purpose is to

offer a variety of services and resources in response to the needs of Blacks who are recruited and employed as firefighters and to aid in motivating our Black Brothers to seek advancement to elevated ranks throughout the Fire Service. The corporation is organized exclusively for educational, charitable, religious, scientific, and literary purposes, within the meaning of Section 501(c)(6) of the Internal Revenue Code.[7]

And more recently, current leadership pursued designation of the organization for tax purposes under Section 501(c)(5).[8] In the SBFFA's bylaws, its stated objectives are "the recruitment and promotion of minority membership into the Seattle Fire Department. The encouragement of higher degrees of skill and efficiency in the fire service, the cultivation of friendship and fellowship among it[s] members." These documents highlight the charitable purposes of the SBFFA. See RCW 19.09.020(3) (definition of "charitable" includes "eliminating prejudice and discrimination"). And the SBFFA pursues charitable purposes. But the bylaws also emphasize the professional advancement of its members. They do not

---

[7] 26 U.S.C. § 501(a) and (c)(6) provide a tax exemption, unless otherwise denied under other sections, to "[b]usiness leagues, chambers of commerce, real-estate boards, boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

[8] 26 U.S.C. § 501(c)(5) covers "[l]abor, agricultural, or horticultural organizations."

unambiguously indicate an intent that SBFFA operate "primarily or exclusively" for charitable purposes under RCW 24.03A.010(5).

The superior court heard testimony from founders of the SBFFA and concluded that the founders wanted to engage in political activity, which is why the organization was never registered under 26 U.S.C. § 501(c)(3). The superior court, in its oral ruling, stated that "the founders of this organization intended for it to be and, in fact, operated it as a charitable organization, notwithstanding the political—the activities that they were involved in politically." The superior court explained that, "[t]his is not an organization today that meets the definition based upon the evidence that I heard. I don't find that the burden has been borne, if you will, for the Court to make a finding that—that the [SBFFA] meets the definition of a charitable organization." In its written findings, the superior court found that the SBFFA is not a charitable corporation, and noted that the SBFFA "historically operated as an organization engaged in community and charitable activities," and that the "values of the organization and its activities, under its current leadership, have changed."

Focusing on the language that the organization's values and activities have changed, Chappel and the Attorney General attribute to the superior court a ruling that the SBFFA once met the current definition of a charitable corporation, but no longer does. We agree with the Attorney General that "a charitable corporation may not change its purpose to a non-charitable one without taking specific and statutorily-mandated steps intended to protect charitable assets from misuse." See, e.g., RCW 23.03A.908 (limitations on corporations holding property for

charitable purposes). But neither the SBFFA's history as a civil rights organization engaging in charitable works nor its values and activities changing is inconsistent with the superior court's conclusion that it did not meet the definition of a charitable corporation. Engaging in charitable activities does not make the SBFFA a "charitable corporation" under RCW 24.03A.010. In addition to its charitable activities, the SBFFA worked to advance the interests of its members and it engaged in political activities. Though the SBFFA engaged in charitable activities, its later, changed, activities are proper extrinsic evidence to show it was not operated primarily or exclusively for charitable purposes. This is supported by the SBFFA's articles of incorporation, its bylaws, the record provided to us, and the superior court's clear conclusion that the SBFFA is not a charitable corporation. As a result, the SBFFA house is not subject to the restrictions on property held for charitable purposes.[9]

V

Chappel argues the superior court erred in denying his motion for costs because he was the substantially prevailing party and entitled to costs under chapter 4.84 RCW. We disagree.

We review an award of costs for abuse of discretion.[10] Payne v. Paugh, 190 Wn. App. 383, 413, 360 P.3d 39 (2015). Under RCW 4.84.030, a prevailing

---

[9] Because we affirm the superior court's ruling that the SBFFA is not a charitable corporation, it is not necessary to address the Attorney General's argument about the nature of the duties owed by Board members of a charitable corporation.

[10] Case law suggests that whether a party is a "prevailing party" may be a mixed question of law and fact and reviewed "under an error of law standard." Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 782, 275 P.3d 339 (2012).

party in the superior court "shall be entitled to his or her costs." The statute narrowly defines costs to certain expenses such as filing fees, process server fees, publication fees, notary fees, and reasonable expenses incurred in obtaining reports and records. RCW 4.84.010(1)-(5). In general, a prevailing party is one who receives an affirmative judgment in their favor, but if neither party wholly prevails, "then the determination of who is a prevailing party depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties." Riss 131 Wn.2d at 633. "If both parties prevail on major issues, however, there may be no prevailing party." Phillips Bldg. Co. v. An, 81 Wn. App. 696, 702, 915 P.2d 1146 (1996).

Chappel prevailed on several issues: he blocked the sale of the house (though the requested injunction was not granted because the issue had become moot), secured declaratory relief guaranteeing a vote of the membership to resolve the house's future, obtained a declaratory judgment on the membership issue, proved breaches of the NpCA, and defeated Johnson's tortious interference counterclaim. Johnson prevailed on several issues: Chappel's breach of fiduciary duty, breach of contract, and individual officer liability claims failed, the SBFFA was found not to be a charitable corporation, the SBFFA house was found not to be charitable property, and the superior court affirmed that the Board was properly constituted. Both parties prevailed on major issues. Given the extent of relief

Because we reach the same result under either standard of review, we do not consider whether review for abuse of discretion or error of law governs.

21

afforded to the parties, the superior court did not abuse its discretion in denying costs to Chappel as a prevailing party.

Johnson requests fees on appeal.  Because Johnson does not show entitlement to appellate relief, we deny Johnson's request for fees.  The parties shall bear their own costs on appeal.

Affirmed.

_Birk, J._

WE CONCUR: